Mr. Dripps and Mr. Schneiderwin. Take a moment to get ready if you want. Sit down. Mr. Dripps is right up. Okay, the next case on the docket is 514-0412 Shelley-Reichling v. Touchette Regional Hospital, Inc. Counsel for the appellant is Attorney Boyd Dripps. You may proceed, sir. Thank you, Justice Cates. The threshold inquiry in any borrowed-servant case is whether both parties have consented to the employment relationship. That's been true since the Supreme Court's decision in the Johnson case and remains true through the O'Rourke case and every decision of this Court. When that inquiry is equivocal, courts look to factors such as control because there is no direct evidence of mutual consent. The cases typically focus on evidence of the plaintiff's consent because that's usually what's in dispute. In this case, evidence of the plaintiff's consent is enough to reverse the circuit court's decision to enter summary judgment. But the evidence that… Evidence of plaintiff's consent? Lack of consent. Oh, lack of consent. Issue of consent. Okay. Mr. Dripps, this seems like a pretty classic borrowed-employee situation. I mean, the group that she worked for, ReadyLink, was in the business of loaning employees to hospitals. Absolutely. But the – and I'll probably mispronounce Wisniewski – decision which says that that in and of itself is enough to trigger the next conclusion, which is that the putative employer is, in fact, a borrowing employer because of the temporary agency status, has been repudiated by the Third District, which decided that. And the Lanphier case makes clear that that doesn't end the inquiry, and I think that's what tripped up Judge Loeb in this case. And there are two different areas I want to talk about. One is the lack of control by Touche over the plaintiff, and the other is Touche's repudiation of the employment relationship. And I'll talk about those in sequence. In this case, the plaintiff denied the defendant provided her any instructions or orders other than telling her what department to report to. There's no evidence of any specific order. There are no written orders, no written directives from Touche to the plaintiff in this case. The plaintiff provided her own supplies, her own uniform, her own footwear, her own stethoscope. It's undisputed that she was paid exclusively by the agency, and her malpractice coverage was paid for by the agency. She testified that she was employed by ReadyLink, who would then staff her to different hospitals. Now, she would be staffed at these different hospitals at the request of the hospital. Well, not directly to her, but in the room. Yeah, not directly to her, but I mean, the Touche Regional Hospital contacts ReadyLink and says, we need a nurse or five nurses or ten nurses or whatever, I don't know. Sure. And then ReadyLink, and they say, when do you need them, what shift, et cetera, and ReadyLink sends them. I mean, they don't just show up. That's true. The hospital requests them. Right. Now, the plaintiff also testified, and this was unrebutted, that she never asked the supervisor for her tasks, and she rarely even saw a hospital supervisor. The hospital admitted that with its own employees, direct employees, it would discipline them directly, that they would actually take action against those employees. Here, they did not do that. There was a nursing anecdotal note saying, your agency will be notified of this occurrence. They admitted that they could not discipline her directly. Did the hospital reserve the right to reject a nurse that was sent by ReadyLink? I believe so. In other words, they could say, no, we don't want her back anymore. They could do that, but they also said that the fact that they can request anyone to leave the facility did not indicate anything about their status, and that was in the defendant's corporate rep depo, where they said they could do that for their own employees, they could do that for vendors, contractors, patients, or even visitors, and that the fact that they could be barred from the premises, which did not occur in this case, didn't say anything about the person's status. Direct employees submit job applications and undergo an interview. That did not happen in this case. And the plaintiff prosecuted her workers' comp claim against ReadyLink, who paid it. Touche paid nothing in comp benefits. Let me just stop you there about the workers' comp case. That was totally the plaintiff's choice. She could have included both as borrowing and loaning employers in the comp. It happens all the time. Absolutely. I believe that the plaintiff did put the hospital on notice, and they refused to participate in the comp case. Were they named as a respondent in the application? I don't think they were named as a respondent. I don't think they were notified. And I don't think the record is clear on exactly how that was. I don't believe they were actually named as a respondent. But I think that shows that the plaintiff thought she was employed by ReadyLink rather than employed by the hospital. And you agree, though, don't you, that she could have named Touche Regional Hospital in the workers' comp proceedings? She could have named them and possibly recovered. And would you have much doubt if she would have named them and there would have been a global settlement? Where would we be then? If there had been a global settlement and Touche had contributed, Touche could probably have invoked the exclusivity portion of the statute. I understand that didn't happen. Yeah, it did not. And in this case, the evidence of control by the hospital is simply insufficient to compel the conclusion that as a matter of law, they're entitled to judgment based on the exclusivity portion of the statute. I think that would be enough by itself. But the contract between Touche and the agency has two separate provisions, which I think are key. The first one says personnel placed at client facility are ReadyLink employees. That's very clear. It doesn't say, and they're also employees of Touche. Could have said that. And I think that distinguishes this case from the vague contract that the First District referred to in the Hastings v. Jeffco case. The closest case, I think, is the O'Loughlin case because in this case there's also a restrictive covenant in the contract between Touche and the agency. That barred Touche from hiring directly or indirectly. Actually, I think the term is employment, direct or indirect. And for a period of three years, she was in, I think, the 25th month of her contract with ReadyLink. I think in her deposition, and I think it's in the record in pages C89 to 90, she testifies that she had the memorandum of understanding with ReadyLink in November of 2008, and the accident is in November of 2010. Touche entered into an agreement evidencing an intent not to employ the ReadyLink staffers. And that takes us back to there is no implied consent on both parties to enter into an employment relationship. Touche can't have it both ways. They can't say we're not responsible for comp. We're not responsible for malpractice insurance. We're not having any direct or indirect employment relationship. And then come in and say she's our employee and can't sue us because of comp exclusivity. There's no case where a defendant has had such a contractual disclaimer of employment that has survived to the summary judgment stage. O'Loughlin rejected that specific proposition and said the contract is clear. They're the employees of the other agency. Because the contractual provision evidences Touche's intent not to employ the plaintiff directly or indirectly, the trial court heard in entering summary judgment in this case. And the case should be reversed and sent back for further proceedings. Thank you. Thank you, Mr. Thompson. Mr. Schneider. May I please report, counsel? Good morning. My name is Dave Schneider and I represent the appellee defendant Touche Regional Hospital at Centerville, Illinois. The trial court did not err in granting summary judgment in this matter. And the facts before the trial court were capable of only one reasonable inference. The plaintiff was a loan employee to the defendant. In Chaney v. Yedder Manufacturing, the fourth district, a case very similar to this one that's before the court now, held that whether a loan employee or a borrower employment status exists is generally a question of law, but it becomes a question of fact where the facts are undisputed and capable of only one inference. The undisputed facts in this matter are capable of only one reasonable inference. I think you said that in reverse. It's generally a question of fact, but becomes a question of law. It's a question of fact, but it becomes a question of law when the undisputed facts are capable of only one reasonable inference. Now, the Illinois Supreme Court and A.J. Johnson Paving Company established a two-fold inquiry to determine whether a loan employment status exists. And I've cited that case in my brief and outlined the two-fold inquiry. And both prongs of this inquiry have been met in this matter in the affirmative. However, plaintiff in his brief attempts to modify this inquiry that was set forth by A.J. Paving Company and claims that the first prong of the inquiry is whether or not the employee is wholly subject to the control and direction of the employer and to whom he is a loan. The plaintiff cites this court's case of Freeman v. Augustine, which was decided by this court in 1977. However, respectfully, the Illinois Supreme Court in 1980 established a two-fold inquiry, which is now before this court, the same inquiry that's now before this court, which did not include the term wholly. And further, this court in Trenholm v. Edwin Cooper in 1986 adopted the two-fold inquiry as set forth by A.J. Paving Company. The plaintiff is attempting to heighten the two-fold inquiry standard that was set by the Supreme Court in 1980. Now, the first prong of the two-fold inquiry by the Illinois Supreme Court set forth five factors to support a determination of whether a borrowing employer had the right to control and direct the manner on which the employee performed the work. Those factors were the employee worked the same hours as the borrowing employer. Two, the employee received instruction from the borrowing employer's foreman and was assisted by the borrowing employer's employees. Third, the loaning employer's supervisors were not present. Four, the borrowing employer was permitted to tell the employee when to start and stop working. And fifth, the loaning employer relinquished control of its equipment to the borrowing employer. All these factors were met in this case. As I stated earlier, the Chaney case is on fours, directly on point with this case that's before this court. The plaintiff, Chaney, was employed by a temporary staffing agency, just like Ms. Ryker. Chaney was assigned to a temporary staffing agency to work at different plants. And in this case, the appendix plant, the others plant, and Chaney. Chaney received workers' compensation benefits from the temporary staffing agency and received benefits from the accident that happened in the Chaney case. The defendant paid the temporary staffing agency the employee's hourly wage, and the temporary staffing agency handled the employee's payroll, taxes, reporting, insurance, and workers' compensation benefits. Exactly like the case that's now before this court. The contract between the temporary staffing agency and the defendant provided that the staffing agency was to hold the defendant liable under the workers' compact and for injuries suffered to the temporary employee, exactly like Mr. Dripps alluded to earlier. The court of Chaney applied the A.J. Johnson Paving Company factors and affirmed the trial court's grant with summary judgment on that matter. Now while in Chaney the defendant, they found that the defendant could not just discharge Chaney from the temporary staffing agency, they found that the defendant could ask Chaney to leave this facility. And they found that is enough for the discharge element of the factors that are set forth in the A.J. Paving Company. The court of Chaney also found that despite the temporary staffing agency paying the employee, the fact will not defeat the finding of a loan employment situation. And A.J. Paving was a summary judgment? A.J. Paving Company I think was a review of the industrial commission's finding in A.J. Paving Company. So it was a little different. Chaney was I think a summary judgment or a dismissal that was granted in favor of the borrowing employer. But again, the method of payment is so common with a temporary employment agency, and there's little import in Chaney case found. As to the second problem of the two-fold inquiry, it's held that an employee's consent to an employment contract be expressed or implied, and may be implied in the context of a temporary staffing agency. The plaintiff in Chaney knew she was working for a defendant, but through the staffing agency, and thus had finally agreed to a loan employment relationship, much like the current case. Ms. Reikling knew that ReadyLink was a temporary staffing agency. As Mr. Drift alluded to, she had been appointed for at least 25 months, assigned to different hospitals through the temporary staffing agency. And that when she went to the defendant's hospital, Touche, through ReadyLink, she was there at the hospital to do the work for the hospital, not ReadyLink. And as pointed out by plaintiff, in her brief and in argument here, she didn't submit a resume. She wasn't interviewed by Touche. She came there as a borrowed employee from ReadyLink. It's true, isn't it, that ReadyLink is only in the business of supplying employees to others. That's my understanding. They don't do anything else. Yeah. I mean, they don't have any facility where nurses work for them. Correct. That's my understanding, Your Honor. The plaintiff also argues here that because there's a contract or agreement between defendant and ReadyLink to relieve defendant from liability under the Workers' Compensation Act, that defendant cannot avail itself of the protection of the exclusive remedy provision of the act. This was the same argument advanced by the plaintiff to Cheney, which was discounted by the court. The court of Cheney held that to adopt such an argument would require the court to ignore the act's explicit provisions, making borrowing and loaning employers jointly and separately liable. Despite the identification agreement between the borrowing employer and the temporary staffing agency, the borrowing employer is still primarily liable for the injuries to the loaned employee. And as the court alluded, they could have named Touche in the Workers' Compensation Act, but they didn't. And we would have been under Section 184 of the Workers' Compensation Act. We're primarily liable. The borrowing employment agency is secondary. The loaning employer is secondary liable. That's included under the act. But the act also allows for agreements between the two different employers to shift that liability. And there was such an agreement here. Yes, exactly. Exactly like the case in Cheney. And the court of Cheney indicated that a loan employer's right to reimbursement may be waived by agreement between the two employers. Further, as demonstrated by the cases cited by both the appellant and the appellee that involve temporary staffing agencies, all these cases that involve these agencies, there's typically an agreement regarding identification.  And another factually similar case is the Chavez versus TransLoad services, in which the court upheld the dismissal of a complaint that the found that the borrowing employer was entitled to protections of the Workers' Compensation Act. The plaintiff and Chavez worked for a temporary agency and was assigned to the borrowing employer. The temporary agency, Chavez, and Chavez provided his workers' compensation coverage and paid his pension even. Chavez performed the same type of work as the other employees, received a handbook from the borrowing employer, and the borrowing employer could discharge Chavez from his employment. The court in Chavez applying the twofold inquiry found that it had been satisfied because Chavez accepted the borrowing employer's handbook, much like Ms. Reitling acknowledged in writing her job duties while at Defendant's Hospital. The plaintiff earlier alluded to a memorandum of understanding. That was not a memorandum of understanding of Freddie Lane. I think that was a memorandum of understanding of Touche and what policies and procedures she was to follow by when working at Touche as a temporary employee. And what job duties were expected of her. And Chavez also, the borrowing employer, removed her from the work site. They could set Chavez's hours of work, just like what we did here in Touche. With Touche, we set her hours of work. We actually wrote her up, gave her a notice that she violated her shift hours by working over. Chavez received instructions from the borrowing employer, just like she received instructions on which department to work in, that is, Ms. Reitling. Well, in that Touche, she received a schedule from the ER director. And he impliedly, and Chavez, he impliedly accepted the relationship by accepting the assignment to the facility, just like Ms. Reitling did. She received a phone call to appear as a temporary employee. She appeared at Defendant's facility and worked in the ER department at the time in question. And most recently, the 1st District in 2012 in Podany versus Grossinger City Audit Court applied to two-fold inquiry. An upheld summary judgment in favor of the borrowing employer. Of significance from this matter is that the court held that due to the specialized technical nature of the decedent's work, the absence of specific instructions by the borrowing employer was immaterial. The decedent in Podany was sort of a handyman. He worked on various auto dealerships doing repairs. And in this case, when he was fatally injured, he was working on a garage door. Ms. Reitling was a registered nurse working in the ER department. She had specialized technical training and her work was of a specialized technical nature. More so than the decedent in Podany. And therefore, specific instructions from Defendant supervisors were immaterial. Also, the decedent in Podany supplied his own tools and also used the borrowing employer's tools. Exactly what Ms. Reitling testified to. Now, I know Mr. Drift just said she supplied her own tools, but no. The hospital supplied her with syringes, the needles, the medication, the IVs, everything to do her job as an ER nurse. Now, the uncontested facts before the trial court would support summary judgment. The plaintiff worked the same shift hours as Defendant's other employees, as neither Reitling nor plaintiff set her start and stop times. The plaintiff admitted she would receive instruction from Defendant's house supervisor in which department she was to work. She also admitted that she received a schedule from the ER's, Defendant's ER director. The plaintiff also would follow requests from other nurses and would take orders from Defendant's doctors. The plaintiff testified that at the time of the alleged incident, she was providing care and treatment to one of Defendant's patients. And was taking instructions from Defendant's ER doctor. No one was present at Touche Regional Hospital from Reitling. No one was there. She didn't have to call Reitling if she was going to care for a patient, to ask if she could do it first. And Reitling relinquished control of the plaintiff by sending her to Defendant's hospital without any supervisors. Defendant's house supervisor and ER director testified that they would request plaintiff to leave Defendant's hospital at any time. Further, the agreement between Defendant and Reitling gave Defendant the right to immediately terminate the services of plaintiff from Defendant's hospital. Also, the written agreement gave Defendant the responsibility to supervise loaned employees by Reitling, including clinical supervision. Now, the second problem with two-fold inquiry, whether a contract of hire existed between the two, this can be implied. Plaintiff admits at the time of the election that she was working for a temporary employment agency. And was accepting temporary employment assignments at Defendant's hospital through this agency. Plaintiff knew that Defendant generally controlled or was in charge of the performance of the hospital. She was written up for working again. She was signed off on a memo of understanding. She also signed off on what job duties she was to undertake while at the hospital. She realized she had to work in accordance with Defendant's policies. Defendant told her what department to work in. Plaintiff's actions by merely showing up and appearing at Defendant's hospital through a temporary staffing agency, and responding to instructions as to which department she was to work in, demonstrates the required consent. No other inference can be drawn from these facts. And it's interesting to note, out of all the cases directly cited by both the appellant and the appellee in this case, that in the case in which a temporary staffing agency loaned an employee to another employer, the summary judgment or dismissal was upheld. Defendant borrowed an appointment. The relationship existed. Now Plaintiff said the O'Rourke case is the case that's most on point here. This case is clearly distinguishable. This case is not about a temporary staffing agency. In O'Rourke, when the plaintiff was hired by a school and did work for a school as a painter, the summer after the plaintiff was hired, the school contracted with the Defendant, a service master. Service masters provide administrative and custodial direction to the custodial department of the school. The plaintiff did not work for the management company. In fact, after the management company was hired, the plaintiff remained painting for the school. Has he done so before in the past? The plaintiff has never loaned to the management company. He never worked for the management company. The management company was only to supply advice on how the custodial department and how to manage the custodial department. And in Hastings, which was also indicated by the plaintiff, this is a specialized area of law, the leasing of cranes. Not only were they giving just an employee, they were leasing a piece of equipment to the Defendant in Hastings along with an operator crane. This is a distinct area of law and can be obviously distinguished from this case. Now, further regarding agreement between ready-linked and Defendant, the plaintiff alleges that Defendant cannot claim the plaintiff as its borrowed employees because the agreement indicates the personal place at Defendant's facility are ready-linked employees. Again, this argument fails to take into account the Works Compensation Act's exclusivity provision and joint separate provision. It also ignores Section 5 of the agreement, which gives the Defendant the responsibility of scheduling, supervising, and terminating employees loaned by ready-linked. Further, the plaintiff argues that in light of the agreement, the plaintiff cannot expressly consent to the Defendant serving as her employer. The plaintiff did not consider herself an employee of the Defendant. Court Shabazz was faced with the exact same argument. Court Shabazz held that irrespective of the plaintiff's claiming, he never consented to the transfer of his borrowed employee. He impliedly consented to the relationship by accepting the employment assignment with transload, as well as its control and corrections. The same facts that we have now before this Court. The plaintiff also raises collateral estoppel in her brief. This issue was not raised at the trial court or argued at the trial court, and thus it's waived. Nowhere in the plaintiff's response to the Defendant's motion for summary judgment did they even mention the word collateral estoppel. Again, the plaintiff waived this argument on appeal. However, if this Court believes it's not waived, collateral estoppel will not foreclose the fact that the plaintiff is the Defendant's borrowed employee. As the First District Court noted in Crespo v. Weber-Stevens products, the plaintiff had filed a workers' compensation claim against the staffing agency, but did not file a claim against the borrowing employer. The plaintiff settled the workers' compensation claim, but did not include the borrowing employer. Exactly what happened here. The Court still found in Crespo that the plaintiff was a lone employee to the Defendant. The Defendant was subject to the protections of the Workers' Compensation Act. Another exactly case on a point like that is Evans v. Abbott products. Again, the First District in 1986 found that even though they weren't part of the Workers' Compensation settlement, they were entitled to protections of the Workers' Compensation Act as a borrowing employer. Lastly, the plaintiff's claim to the Defendant's reliance on the Weisselowski case, and I hope I pronounced that right, are incorrect and misleading. The Defendant did not cite this motion in its summary judgment call. However, the Defendant did cite this case in one paragraph of his memorandum. However, immediately after that paragraph, the Defendant stated, Despite the holding of Weisselowski, the Defendant will address below the factual analysis of the two-fold tests as set forth by the Illinois Supreme Court. The remaining pages of the Defendant's 12-page memorandum address the H.A. Johnson Paving Company factors and the two-fold inquiry and make argument to that. Now, when I was alerted to this fact and this mistake during argument before the trial court, I apologized to the trial court. I concurred that the case had been overruled, but stressed that Weisselowski was not the basis of my argument. It was not the basis of the defense argument at all. As you can see from the only five lines in one paragraph of my memorandum where it's cited, and it's the one to state that the H.A. Paving Company factors were clearly controlled, and this is why. In conclusion, the trial court properly applied the two-fold inquiry set forth by the Illinois Supreme Court's holding in H.A. Johnson Paving Company and concluded from only one reasonable inference could be made from the facts. The Plaintiff was a lone employee of the Defendant, the borrowing employer. Therefore, the Defendant was entitled to the exclusive remedy provision of the Illinois Works Compensation Act, thus barring the Plaintiff's common-law cause of action against it. I respectfully request that this Court uphold and affirm the trial court's order of August 1, 2014, granting summary judgment in the Defendant's favor. Thank you. Thank you, Mr. Schneiderlin. Mr. Drex, do you have a comment? The reason that I think O'Roughlin is controlling is because the O'Roughlin court said that control is irrelevant if there is not consent, and the O'Roughlin court said that the contract is relevant to that issue of consent. I kept waiting for Mr. Schneiderlin to say that the restrictive covenant didn't apply for some reason in this case. He didn't say that. The restrictive covenant applies, and whether you characterize it as collateral estoppel or whether it's simply evidence that the hospital did not indicate consent to plaintiff's employment, it is sufficient to defeat summary judgment in this case. The hospital cannot say, we agree not to employ you directly or indirectly, and then say you are our direct or indirect employee. They cannot take that inconsistent position in order to invoke the exclusivity provision of the COMP statute. It's part of their effort to evade any responsibility for workers' COMP liability. And the O'Roughlin court noted that rather than paying plaintiff benefits under a workers' compensation policy, naming the school as additional insurer, defendants contractually disclaimed any responsibility for workers' COMP coverage of plaintiff and are paying plaintiff no benefits. And that was one of the linchpins for that court's decision. The Supreme Court's decision in the A.J. Johnson Caving Company, Justice Cates, to follow up on your question, was after a hearing on the merits. There was a full decision, and the court said the industrial commission's decision isn't against the manifesto. Wait, that's a far different pride from saying that summary judgment is mandated. And the Johnson court, at 82 ill second, at 348 says, this court has recognized that the loan employee concept as applied to cases under the act requires the existence of a contract for hire, either expressed or implied, between the employee and the special employer before such employer may be held liable for compensation. You can't have an expressed, you can't have a contract of hire expressed or implied when the employer expressly disclaims any such contract of hire. That's in an agreement between the ReadyLink and the hospital, and the intent of that is that they not hire the nurse away from the agency, right? Well, that's probably one intent. Well, I mean, you'd agree that's probably got something to do with it. Sure, absolutely. They don't want to send, and then the hospital will start immediately hiring their best employees that are signed up with the agency. But aren't we talking about two different concepts there, though, really? I mean, as between the purported loaning and borrowing employers, they're making an agreement not to totally hire that employee away. But, you know, for example, what's in the memorandum of understanding that the plaintiff signed with the hospital? I mean, doesn't she agree to follow their procedures and so forth and so on? Yes, sure. But the contract that we're relying on says two things. One is she is an employee of ReadyLink, and she can't be an employee of the hospital. And I don't think the hospital can have it both ways. That's what they're asking you to do. That's what they convinced the trial judge to do. And I just submit that when they have a contract like that that says we're not your employer, they have to be stuck with that. Thank you. Thank you, Mr. Gibbs. Okay, this matter will be taken under advisement, and this position issued in due course right now.